OPINION. Le Mere, Judge: Respondent’s principal contention in these proceedings is that Roxbury sold its one-half interest in the Roxbury Heights joint venture to Keller-Block in December, 1942, prior to its dissolution. On that theory, he has determined that Roxbury incurred a tax liability for 1942, for which its stockholders, Gilman and Hornstein, and their wives, are liable as transferees. In the alternative, respondent contends that Gilman and Hornstein realized community income in 1943 of $90,000 from their interest in the Rox-bury Heights joint venture which they acquired upon the dissolution of Roxbury in 1942. Under this theory respondent has determined the deficiencies against Gilman and Hornstein for 1943. In his brief respondent states: * * * There is no controversy between the parties, under the pleadings, as to the fact that there was a sale to Keller-Block of the joint venture interest, or that such sale resulted in a gain or profit to the vendor of $90,000.00. * * * Thus, the dominant issue, as stated by the respondent in his brief, is “whether the sale of the joint venture interest was made by Roxbury during the taxable year 1942, or by Hornstein and Gilman, in 1943, after acquisition thereof by liquidation of Roxbury.” Respondent contends that the sale was substantially completed about the middle of December, 1942, prior to the dissolution of Roxbury. There is no disagreement as to the fact that Roxbury was dissolved December 30, 1942, and its assets distributed to Gilman and Hornstein on the following day, December 31,1942. The evidence is clear that the sale was not consummated or the assets transferred to Keller-Block until some time in 1943. The date of the execution of the preliminary agreement between Gilman, Hornstein, and Keller-Block outlining the general terms and conditions on which the transfer was to be made is the matter mentioned above in our findings of fact as to which there is conflicting evidence. The instrument was prepared in typewritten form, with the date of the month left blank, as follows: “This Agreement made and entered into this-day of January, 1943, by and between I. Joe HoeNstein and FbaNk Gil-man, first parties, and Paul KelleR-Block, second party.” Later the word January was stricken with pen and ink and the word December written above it. Apparently, at the same time “81st” was written in the blank space. These changes were initialled in the margin by all three parties to the agreement. The only explanation of this change in the instrument is that it was made at the suggestion of Keller-Block at the time the agreement was executed. However that may be, it is apparent that the instrument was executed at some time in January, 1943, and dated back to December 31,1942. Keller-Block, who appeared as a witness for the respondent, testified, first, that according to his best recollection the negotiations leading up to the purchase by him of Gilman’s and Hornstein’s interests took place about the middle of December, 1942, and that the sale price was agreed upon at that time. ' He later testified, however, after refreshing his memory from certain documents, that he could not say definitely whether these negotiations took place in December, 1942, or January, 1943. One of the documents referred to was a memorandum prepared by Keller-Block’s attorney which indicates that on December 30,1942, the pai’ties had under consideration a plan for the dissolution of Boxbury and thereafter a sale by Keller-Block of his interest in the joint venture to Gilman and Hornstein. It was suggested in this memorandum that: * * * whatever the deal may be that will ultimately be worked out in 1943, it will not prejudice Mr. Keller-Block’s present position, either on the question of assets or liabilities, or his rights under the existing joint venture agreement and general loan agreement. Beference was also made to “the large tax liability that will have to be paid by Mr. Keller-Block on March 15th” in the event of such sale. This memorandum clearly demonstrates that up to the time it was written, December 30, 1942, there was no agreed plan for the sale by Gilman and Hornstein of their interests to Keller-Block. The respondent’s argument on the factual question as to when the sale took place is based largely on inferences drawn from the circumstances of what he characterizes the tax avoidance scheme of petitioners and their tax counsel. The direct evidence, both oral and documentary, except for the conflicting testimony of Keller-Block, as pointed out above, all supports the contention of the petitioners that the sale by Gilman and Hornstein of their interests in the joint venture to Keller-Block was not consummated or even agreed upon until some time in 1943 and after the dissolution of Boxbury. We must conclude from this evidence that there was no sale by Boxbury of its interest in the joint venture; that Boxbury incurred no tax liability by reason of such a sale; and that petitioners Gilman and Hornstein are, therefore, not liable as transferees for any taxes due from Rox-bury on income realized upon such a sale. The cases relied upon by respondent, such as Commissioner v. Court Holding Co., 324 U. S. 331, and Fairfield Steamship Corporation, 5 T. C. 566; affd., 157 Fed. (2d) 321; certiorari denied, 329 U. S. 774, are not applicable on the factual situation presented here. They are applicable only where there has been a liquidation of the corporation after a sale of its assets has been made, or agreed upon, in an attempt to shift the gain on the sale from the corporation to the individual stockholders. Even if it could be found on the evidence here that Gilman and Hornstein had discussed and had decided upon the sale of their interests in the joint venture but on the advice of tax counsel had decided to defer the actual sale until after dissolution o'f Roxbury, the facts would be no more favorable to respondent than were those in United States v. Cumberland Public Service Co., 338 U. S. 451, where the Supreme Court affirmed the decision of the Court of Claims which had upheld the taxpayer’s contention that the sale was made by the individual stockholders after the corporation had been dissolved and not by the corporation. In its opinion the Court said: Congress Raving determined that different tax consequences shall flow from different methods by which the shareholders of a closely held corporation may dispose of corporate property, we accept its mandate. It is for the trial court, upon consideration of an entire transaction, to determine the factual category in which a particular transaction belongs. Here as in the Court Holding Co. case we accept the findings of fact of the trial tribunal. Accordingly the judgment of the Court of Claims is affirmed. There remains for determination only the question, in Dockets Nos. 20092, 20093, and 20094, as to whether Gilman and Hornstein realized ordinary income from their interests in the Roxbury Heights project in 1943. Respondent’s position on this issue is: * * * that the thing distributed in liquidation by the corporation to its two stockholders was a property right in the nature of a continuing interest in the joint venture, limited, however, in amount, to the latters’ share of the joint venture profits as agreed upon by the parties, and that the income in question was derived by those petitioners in the year 1943 from such continuing interest in said joint venture, and not from a sale of the joint venture interest. Petitioners reported long term capital gains on the liquidating distributions received from Roxbury in 1942 and paid taxes thereon. No question is raised in these proceedings as to the amount of the gains, if any, thus realized by them. The respondent has determined, however, that the capital gains reported by the petitioners in their 1942 returns should be eliminated therefrom, on the theory that what petitioners received in 1942 was a continuing interest in the joint venture, from which they realized ordinary income in 1943. It is our view of the situation, as already stated with respect to the first issue, that Eoxbury was completely liquidated and its assets distributed to Gilman and Hornstein in 1942. That being so, petitioners properly reported their gain from the liquidation in that year. It is too plain for argument, we think, that petitioners sold to Keller-Block in 1943 the capital interest in the joint venture which they had received on the liquidation of Eoxbury in 1942. Since their interest had a cost basis, the value at the time of its distribution to them by Eoxbury, equal to the sale price of $140,000, no gain was realized on the sale by the petitioners in 1943. Decisions will be entered for the petitioners.